UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEROY HENDRIX, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 13 -cv- 1108 (TSC) <br> ) |
| JANET NAPOLITANO, | ) <br> ) |
| Defendant. | ) <br> ) |

**MEMORANDUM OPINION**

Plaintiff Leroy Hendrix alleges five counts in his Complaint: 1) employment discrimination on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); 2) employment discrimination on the basis of retaliation pursuant to Title VII; 3) hostile work environment pursuant to Title VII; 4) constructive discharge/wrongful termination; and 5) equitable relief. Defendant Jeh Johnson,[1] Secretary of the United States Department of Homeland Security, moved for dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and for summary judgment under Rule 56 on Count IV (ECF No. 10, the "Motion"). In the Motion, the Secretary argues that Executive Branch security clearance decisions are committed by law to the "broad discretion" of the Executive Branch agency responsible and are not subject to judicial review, citing *Dep't of the Navy v. Egan*, 484 U.S. 518, 527-29 (1988). (Mot. at 9–17). In his Opposition, Mr. Hendrix acknowledges the effect of *Egan* and "[v]oluntarily agrees to dismiss

---

[1] Mr. Hendrix's Complaint names as Defendant Janet Napolitano, in her capacity as Secretary of the United States Department of Homeland Security. Ms. Napolitano has since resigned. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Johnson, who currently holds this office, is automatically substituted as Defendant.

1

Counts I – III of his Complaint." (ECF No. 13, Opp'n at 15). The scope of the Court's analysis, therefore, is limited to Counts IV and V of the Complaint. Because the facts and law present but one outcome on Count IV, the Court enters summary judgment on it in the Secretary's favor. The Court must dismiss Count V for failure to state a claim upon which relief can be granted.

## I. RELEVANT UNDISPUTED MATERIAL FACTS

The following facts are undisputed by the parties. Mr. Hendrix, who is African-American, was employed in the United States Secret Service's Los Angeles Field Office ("FO") at the time of his retirement on September 30, 2012.[2] (ECF No. 1, Compl., ¶ 15; Mot. 1 ¶ 1; Opp'n 9). On October 1, 2010, Mr. Hendrix received a Notice from the Chief of the Secret Service's Security Clearance Division ("SCD") that his Top Secret security clearance was being suspended because additional time was needed to resolve adverse information regarding Mr. Hendrix's alleged misuse of the Baltimore FO's Confidential Fund and to conduct additional investigation. (Compl. ¶ 44; Mot. 2 ¶ 5; Opp'n 10). Mr. Hendrix subsequently received a Notice of Determination ("NOD") dated October 3, 2011, from the Chief of the SCD stating that a determination was made to revoke Mr. Hendrix's Top Secret security clearance based on his knowing use of the Baltimore FO's Confidential Fund for unauthorized purposes associated with a retirement party, and for intimidating a subordinate employee to sign Secret Service forms authorizing the payment. (Compl. ¶ 44; Mot. 2 ¶ 8; Opp'n 11). Between October 1, 2010 and October 3, 2011, the SCD placed Mr. Hendrix on "Do Not Admit" status, which meant that he was not permitted access to secure facilities or grounds. (Compl. ¶¶ 43, 46; Mot. 2 ¶¶ 6, 7; Opp'n 10). Mr. Hendrix appealed the NOD to the final stage of review for such actions and

---

[2] In the Complaint, Mr. Hendrix alleges he retired "on or around September 31, 2012." (Compl. ¶ 15). The Court takes judicial notice that September has only 30 days, and therefore construes the intended date as September 30th.

received a notice dated July 20, 2012, upholding the revocation of his Top Secret security clearance and informing him that there was no further right to appeal.  (Mot. 3 ¶¶ 9, 10; Opp'n 11).

On November 9, 2011, Mr. Hendrix received a notice of Proposed Indefinite Suspension from the Los Angeles FO informing Mr. Hendrix of a proposal to suspend him for an indefinite period without pay for failure to maintain his Top Secret security clearance; the notice provided appeal rights to the parent office for the Los Angeles FO.  (Compl. ¶ 7; Mot. 3 ¶ 11; Opp'n 11). Following Mr. Hendrix's response to the proposal, on January 12, 2012, he received an Indefinite Suspension Decision from the parent office for the Los Angeles FO stating that he would be suspended from duty without pay for an indefinite period of time effective January 14, 2012.  This Decision further stated that the indefinite suspension would terminate at such time as the Secret Service issued either a decision reinstating Mr. Hendrix's Top Secret security clearance, or issued a final decision revoking that clearance and completed any further adverse action stemming from the same matter.  (Compl. ¶ 50; Mot. 4 ¶ 12 and Ex. 11; Opp'n 11).

Mr. Hendrix then received a notice of Proposed Removal dated July 30, 2012 from Special Agent in Charge ("SAIC") Joseph Beaty that proposed Mr. Hendrix's removal from Secret Service employment based on failure to meet the requirements of his position due to revocation of his Top Secret security clearance.  (Compl. ¶ 51; Mot. 4 ¶ 13; Opp'n 12).  The Proposed Removal required that any reply be directed to Deputy Assistant Director ("DAD") Lee Fields, Office of Investigations.  (*Id.*).  Mr. Hendrix submitted a written reply and subsequently received a Removal Decision from DAD Fields upholding the proposed removal

and making Mr. Hendrix's removal effective October 1, 2012.  (Mot. 4 ¶ 14; Opp'n 12).  Mr. Hendrix retired effective September 30, 2012.[3]  (Compl. ¶ 15; Mot. 5 ¶ 15; Opp'n 9).

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Maydak v. United States*, 630 F.3d 166, 181 (D.C. Cir. 2010) (quoting *Celotex Corp.*, 477 U.S. at 322-23).  "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. (quoting *Celotex Corp.*, 477 U.S. at 323).

"[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the

---

[3] *See supra*, n.2.

entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323-24.

### III.   ANALYSIS

#### a.   Count IV:  Constructive Discharge

In Count IV of his Complaint, Mr. Hendrix alleges that his retirement from the Secret Service the day before his removal was to be effective was involuntary and amounted to a constructive discharge due to the Secretary's unlawful conduct; namely, racial discrimination, retaliation, hostile work environment, and compulsion or duress. (Compl. ¶¶ 108–10). Mr. Hendrix alleges numerous injuries as a direct and proximate result of the alleged constructive discharge, including but not limited to, lost wages, loss of reputation, promotion, and career prospects, and medical expenses and costs. (*Id*. ¶¶ 111–13). As noted above, however, Mr. Hendrix has voluntarily withdrawn his three Title VII Counts, which consist of racial discrimination, hostile work environment, and retaliation.

"A finding of constructive discharge depends on whether the employer deliberately made working conditions intolerable and drove the employee into an involuntary quit." *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981) (internal quotations omitted) (citing *Retail Store Employees Union Local 880 v. NLRB*, 419 F.2d 329, 332 (D.C. Cir. 1968)). "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Penn. State Police v. Suders*, 542 U.S. 129, 130 (2004). When *Clark* was decided, the D.C. Circuit "ha[d] not previously addressed the constructive discharge issue in a Title VII context," *Clark*, 665 F.2d at 1173; that

is, where a plaintiff alleged that Title VII discrimination drove the employee into an involuntary quit.

### i. Constructive Discharge and Title VII Discrimination

In *Clark*, the D.C. Circuit examined case law from other Circuits and found the Fifth Circuit's policy discussion helpful. "[S]ociety and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships." *Clark*, 665 F.2d at 1174 (quoting *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 66 (5th Cir. 1980)). Therefore, a Title VII plaintiff must "mitigate damages by remaining on the job" unless that job presents "such an aggravated situation that a reasonable employee would be forced to resign." *Id*. (quoting *Bourque*, 617 F.2d at 66). For example, the Fifth Circuit in *Bourque* found that a Title VII constructive discharge claim could not be sustained simply upon discrimination manifested in the form of unequal pay; rather, such discrimination required an "aggravated situation" to give rise to a constrictive discharge. *Id*. Under the facts of *Bourque*, the Fifth Circuit observed: "While we by no means discount the discrimination Ms. Bourque may have faced, we simply do not believe that working for unequal pay under the circumstances presented here constitutes a condition of employment so intolerable that an employee is forced into involuntary resignation. The very fact that Ms. Bourque accepted the position under the conditions imposed belies such a contention." *Id*. at 65.

After reviewing cases from the Fifth, Ninth, and Tenth Circuits, including *Bourque*, the D.C. Circuit held in *Clark* that a constructive discharge of a Title VII plaintiff must be justified by the existence of "aggravating factors" beyond the Title VII discrimination itself. *Clark*, 665 F.2d at 1174.[4] In order to prevail on a claim of constructive discharge in this Circuit, therefore, a

---

[4] In *Clark v. Marsh*, the D.C. Circuit found the following circumstances amounted to "aggravating factors" sufficient to result in constructive discharge: Ms. Clark, the former Acting Director of Office of Employment Policy

Title VII plaintiff must show "that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Carter v. George Wash. Univ.*, 180 F. Supp. 97, 111 (D.D.C. 2001) (citing *Clark*, 665 F.2d at 1173-74). "'Aggravating factors' are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006); *see also Clark*, 665 F.2d at 1174.

      Here, Plaintiff has withdrawn all of his Title VII claims. Where a plaintiff alleges that he or she was constructively discharged under Title VII and he or she fails to state a Title VII claim, the constructive discharge claim also necessarily fails to state a claim as a matter of law. *Cole v. Powell*, 605 F. Supp. 2d 20, 25–26 (D.D.C. 2009). Therefore, to the extent Mr. Hendrix's constructive discharge claim relies upon Title VII discrimination, the constructive discharge claims fails as a matter of law. The Court now turns to Mr. Hendrix's claim that he was constructively discharged due to compulsion or duress.

### ii. Constructive Discharge and Compulsion or Duress

      An employee's resignation or retirement is presumed to be voluntary and not an adverse action, unless the employee overcomes the presumption by showing that the resignation or retirement was involuntary, and therefore qualifies as a constructive discharge. *Aliotta v. Bair*, 614 F.3d 556, 566–67 (D.C. Cir. 2010) (citing *Veitch*, 471 F.3d at 134 (Rogers, J., concurring)). "For a resignation to be rendered involuntary on account of duress, three criteria must be met:

---

and Grievance Review of Army, had obtained only one permanent promotion in an 11-year period in which she sought advancement despite an outstanding employment record, formal administrative charges had failed to produce corrective action, a law school graduate selected to be Director had no supervisory experience, the former Acting Director had historically been subject to discrimination, Ms. Clark had repeatedly but unsuccessfully attempted to obtain relief from discrimination, and predictable humiliation and loss of prestige would accompany her failure to obtain the position of Director. *Clark*, 665 F.2d at 1174.

'[1] an agency imposes the terms of an employee's resignation, [2] the employee's circumstances permit no alternative but to accept, and [3] those circumstances were the result of *improper* acts of the agency.'" *Keyes v. Dist. of Columbia*, 372 F.3d 434, 439 (D.C. Cir. 2004) (emphasis added) (quoting *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987)). "Where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Keyes*, 372 F.3d at 439 (quoting *Schultz*, 810 F.2d at 1136); *see also Hill v. Gray*, No. 13-0001, 2014 WL 1118005, at *9 (D.D.C. Mar. 21, 2014) ("An employee's resignation or retirement, when the only other available option for the employee is removal by the employer *for valid reasons*, does not qualify as constructive discharge.") (emphasis in original) (citing *Keyes*, 372 F.3d at 439–40). "Mere uncertainty due to the threat of a RIF [reduction in force] layoff does not translate into a constructive discharge." *Aliotta*, 614 F.3d at 567 (distinguishing between an employee being faced with the risk of termination and the absolute certainty of termination).

It is undisputed that Mr. Hendrix's Top Secret security clearance was suspended pending an investigation into adverse information concerning his conduct. It is further undisputed that the Secret Service subsequently decided to revoke Mr. Hendrix's Top Secret security clearance. Mr. Hendrix acknowledges that, absent a statute providing otherwise, a court may not review a decision regarding suspension or revocation of a Top Secret Security clearance, because such decisions are nonjusticiable under *Egan*. Consistent with *Egan*, Mr. Hendrix makes clear that he "is not challenging the denial, revocation or investigation of his security clearance." (Opp'n 20). Thus, the parties concede, and the law mandates, that this Court cannot question the reasons for the revocation of Mr. Hendrix's Top Secret security clearance, at least in this instance where Mr.

Hendrix has not pleaded a constitutional challenge to revocation. *Cf. Oryszak v. Sullivan*, 388 F.3d 522, 526 (D.C. Cir. 2009) ("Therefore, following the lead of the Supreme Court, we have consistently held that because the authority to issue a security clearance is a discretionary function of the Executive Branch, actions based upon denial of security clearance are committed to agency discretion by law, at least where a constitutional claim is not properly presented.") (citations omitted).

The parties also do not dispute that Mr. Hendrix received a notice of proposed removal from his employment with the Secret Service for failure to maintain a Top Secret security clearance, and that maintaining such a clearance was a requirement for Secret Service employment. It is further undisputed that following Mr. Hendrix's response to the removal proposal, DAD Fields issued a Removal Decision upholding the proposed removal and providing that Mr. Hendrix's removal would be effective on October 1, 2012. Mr. Hendrix therefore concedes that he had no option to continue his employment since he faced imminent removal for revocation of his Top Secret clearance. The parties also agree that Mr. Hendrix retired effective September 30, 2012.

Mr. Hendrix has not properly presented any constitutional challenge to the revocation of his security clearance. Therefore, this Court cannot question the propriety of the revocation of Mr. Hendrix's Top Secret security clearance, which the parties agree was essential for his continued Secret Service employment. Although Mr. Hendrix alleges that he "was compelled to retire" (Opp'n Ex. 2, Aff. of Mr. Hendrix), he was faced with the same situation as in *Keyes*— that is, Mr. Hendrix was "faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, [and] such limited choices do not make the resulting resignation an involuntary act." 372 F.3d at 439. Under the undisputed facts and the controlling law, because

Mr. Hendrix faced certain removal for cause and instead chose to retire, he cannot establish that his retirement was involuntary and therefore cannot establish an essential element of constructive discharge due to duress.[5]

### iii. Constructive Discharge and Summary Judgment

Mr. Hendrix argues that summary judgment is premature and urges the Court to not convert the Motion to one for summary judgment, and instead to permit him to take discovery, without which "Plaintiff will be deprived of a reasonable opportunity to gain evidence to support his case." (Opp'n 18). However, the law of this Circuit and the undisputed facts preclude Mr. Hendrix from establishing an essential element of his constructive discharge claim—that his retirement was involuntary. No additional facts that Mr. Hendrix could uncover during discovery would alter this reality. *See Celotex Corp.*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

The Secretary expressly moved for summary judgment on Mr. Hendrix's Count IV constructive discharge claim. The Court is not presented with a Rule 12(d) situation where it must determine whether to convert a motion to dismiss for failure to state a claim to one for summary judgment. Indeed, Mr. Hendrix specifically responded to all of the Secretary's statements of undisputed material fact by admitting and denying them as Mr. Hendrix deemed appropriate, *and* submitted two exhibits in support of his Opposition—an Individual Complaint of Employment Discrimination, dated December 18, 2012 (ECF No. 13-1, Ex. 1), and his own affidavit (ECF No. 13-2, Ex. 2). Despite Mr. Hendrix's urging now that the Court not "convert"

---

[5] As previously explained, the Court also finds that Mr. Hendrix cannot establish constructive discharge due to Title VII discrimination.

the Secretary's Motion to one for summary judgment, Mr. Hendrix responded to it as if it was a summary judgment motion.

Mr. Hendrix cites Federal Rule 56(d) in his Opposition, but has not made a proper Rule 56(d) request. The Rule states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate relief." Fed. R. Civ. P. 56(d).[6]

Mr. Hendrix did not offer such an affidavit or declaration, nor did he identify any particular facts he intends to discover or explain how discovery could avoid summary judgment. Although the only remaining claim in his suit is constructive discharge by compulsion or duress, Mr. Hendrix inexplicably claims he needs discovery because "the vast majority of the documents needed to support plaintiff's discrimination case is in the sole possession of the employer." (Opp'n at 18). Moreover, he does not identify what documents he seeks from the Secretary other than to refer to them as "comparator information." (*Id*. at 19). Mr. Hendrix has not explained what bearing, if any, "comparator information" has on the elements of non-Title VII constructive

---

[6]

> To obtain Rule 56(f) relief [now found at Rule 56(d)], the movant must submit an affidavit which "state[s] with sufficient particularity . . . why [additional] discovery [is] necessary." *Ikossi v. Dep't. of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation marks, citation omitted). The affidavit must satisfy three criteria. First, it must outline the particular facts he intends to discover and describe why those facts are necessary to the litigation. *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 248 (D.C. Cir. 1999) ("Byrd [must] show what facts he intended to discover that would create a triable issue . . . ."). Second, it must explain "why [he] could not produce [the facts] in opposition to the motion [for summary judgment]." *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999) . . . . Third, it must show the information is in fact discoverable. *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) ("We will not find an abuse of discretion where the requesting party has offered only a conclusory assertion without any supporting facts to justify the proposition that the discovery sought will produce the evidence required." (internal quotation marks omitted)).

*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012).

11

discharge.  Lastly, he has not shown that any purported documentation he seeks is discoverable.  Mr. Hendrix has therefore failed to make a proper Rule 56(d) request.

In addition to requesting discovery, Mr. Hendrix also asserts "a right to confront, cross-examine and impeach adverse witnesses, like Robert Merletti, Robin Despropero-Philpot, Carolyn McMillon and his supervisors, through depositions." (*Id.*).  Putting aside whether he indeed has a "right" to do so in response to a summary judgment motion, Mr. Hendrix does not explain how doing so could defeat summary judgment.

For this Court to deny Defendant's Motion given the undisputed facts, it would have to be possible that retirement in lieu of imminent termination for cause—absent a constitutional challenge—could amount to constructive discharge.  This is not the law in this Circuit.  The undisputed material facts, under *Keyes*, preclude Mr. Hendrix from establishing an essential element of his constructive discharge by duress claim—that his retirement was involuntary—and under *Egan* and its progeny, preclude the Court from finding that his termination was for any reason other than cause.

### b. Count V of the Complaint:  Equitable Relief

Mr. Hendrix asserts a claim for equitable relief in Count V.  Equitable relief, however, is a form of relief and not a cause of action.[7]  Since the Court grants the motion for summary judgment as to Count IV, there is no cause of action in this matter upon which it could grant any equitable relief.  The Court, therefore, dismisses Count V for failure to state a claim upon which relief can be granted.

---

[7] *See, e.g.*, *Davis v. Passman*, 442 U.S. 228, 239-40 n.18 (1979) ("*cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and *relief* is a question of the various remedies a federal court may make available.") (emphases in original).

## IV. CONCLUSION

The Court grants the Secretary's motion to dismiss and for summary judgment because Mr. Hendrix cannot make a sufficient showing on an essential element of his Count IV claim, *Celotex Corp.*, 477 U.S. at 322, and because his remaining Count V fails to state a claim upon which relief can be granted. An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: January 9, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge